

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-10-00488-CR**

ROBERT JACKSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

A jury convicted Appellant Robert Jackson of two counts of aggravated robbery and sentenced him to forty years' confinement for each count. In a single point, Jackson argues that the trial court erred by omitting an article 38.14 accomplice witness instruction and that he suffered egregious harm. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

Kelli Richey lives in Oklahoma and has had two children with Jackson. On September 18, 2009, Richey, Jackson, Rolando Spratt, and Spratt's girlfriend, Deyonne, drove from Oklahoma to Dallas in Richey's Isuzu Ascender to attend a party. Not long after arriving in Dallas, however, Richey and Deyonne headed back to Oklahoma with the Isuzu in tow because it had broken down, but they soon returned to Dallas in Richey's other vehicle, a white Ford Mustang with racing stripes, to retrieve Jackson and Spratt.

On the way back to Oklahoma, the four decided to stop for the night at a Royal Inn and Suites hotel in Denton. After Richey checked into the hotel, she and Jackson went to a nearby Dollar General store to look for a shirt. Jackson remained in the vehicle when Richey went inside. Richey did not find what she was looking for, and she and Jackson returned to the hotel.

Soon thereafter, Jackson told Richey to take him and Spratt to the Dollar General store. They arrived around 9:30 p.m., near closing time, and Richey waited in the Ford Mustang while Jackson and Spratt went inside. After asking Colby Nissen, a store employee, about some merchandise, Jackson pulled a gun on Nissen and told him to take them to the manager's office, where Janice Foust-Vallon, the store's manager, was counting money. Foust-Vallon opened the door when she heard a knock, and Jackson entered the office, shoved Foust-Vallon to the ground, and demanded money, pointing the gun at her. Foust-Vallon gave Jackson the cash that was in the office while Spratt detained Nissen on the floor.

2

Holding the gun to Foust-Vallon's ribs, Jackson then escorted her to the front of the store, where she gave Jackson the money from Nissen's cash register. Jackson and Spratt left the store, and Foust-Vallon called the police.

Richie, Jackson, and Spratt returned to the Royal Inn and Suites to pick up Deyonne before leaving immediately for Oklahoma. Richie later claimed that she did not know that Jackson and Spratt had robbed the Dollar General until Jackson said that they had done so during the drive back to Oklahoma.

Authorities investigating the armed robbery learned that Jackson, Richey, Spratt, and Deyonne had stayed at the Royal Inn and Suites on September 20, 2009, and they recovered video recordings taken by the hotel's surveillance cameras. Investigators also obtained a surveillance video from the Dollar General store. Police eventually arrested Richey, Spratt, and Jackson. Like Jackson, Richey was indicted for aggravated robbery, but she testified against Jackson at trial in exchange for ten years' deferred adjudication.

Jackson argues in his only point that he suffered egregious harm due to the trial court's error in failing to include an accomplice witness instruction in the jury charge at the guilt phase of his trial.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26

3

(Tex. Crim. App. 2009). If error occurred, we then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

The statutory accomplice witness instruction provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). If a prosecution witness is an accomplice as a matter of law, the trial court is under a duty to instruct the jury accordingly. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). Failure to do so is error. *Id.*

Here, Richey was indicted for aggravated robbery. Therefore, she was an accomplice as a matter of law, and the trial court erred by failing to instruct the jury accordingly. The State impliedly concedes this.

Having found error in the charge, we must now evaluate whether sufficient harm resulted from the error to require reversal. *See Abdnor*, 871 S.W.2d at 731–32. An article 38.14 instruction "merely informs the jury that it cannot use the accomplice witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense." *Herron*, 86 S.W.3d at 632. "Once it is determined that such non-accomplice evidence exists, the purpose of

4

the instruction is fulfilled . . . . Therefore, non-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve." *Id.*

"In determining the strength of a particular item of non-accomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Id.* In addressing the sufficiency of non-accomplice evidence, the court of criminal appeals also recently stated,

> When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence.

*Smith*, 332 S.W.3d at 442 (footnotes omitted).

Jackson concedes that he failed to object to the absence of an accomplice witness instruction; therefore, he must show that he suffered egregious harm from the error to obtain reversal. *Herron*, 86 S.W.3d at 632. Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so

unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id.*

Here, Foust-Vallon identified Jackson at trial as the person who entered the manager's office, pointed the gun at her, and demanded money from her during the robberies.

Narinder Singh testified that he was the manager on duty at the Royal Inn and Suites on September 20, 2009, and that he observed two men with Richey after she checked in. When the State showed Singh several still photographs from the hotel's video surveillance, he identified the two men depicted in the photographs as the same two men who were with Richey at the hotel on September 20, 2009. One of the men was wearing a white T-shirt with a cross on it. Singh testified that he went to the Dollar General store to view footage of the robberies captured by the store's surveillance video and that the two men that he observed in the video were the same two men that he had seen with Richey at the hotel.

Clint McCoy, an investigator with the Denton Police Department, testified that he was called to the scene after the robberies and that he viewed the surveillance videos from both the Dollar General and the Royal Inn and Suites. McCoy opined that the two men that he saw in the surveillance video from the Dollar General were the same two men that he saw in the surveillance video from the Royal Inn and Suites.

Michael Behrens, an officer with the Denton Police Department, testified that a white Ford Mustang with racing stripes was used in the robberies and that police in Oklahoma confirmed that a white Ford Mustang was located at Richey's house the morning after the robberies. Singh also recalled that Richey and the others that she was with at the Royal Inn and Suites drove a white Ford Mustang with stripes.

When authorities visited Richey at her house in Oklahoma the day after the robberies, they seized a pair of black, gold, and white shoes. Detective Keith Martin of the Denton Police Department testified that the shoes looked identical to the shoes worn by one of the suspects in the surveillance video from the Dollar General. Detective Martin also testified that he showed Richey photographs of the two robbery suspects and that she identified the one wearing the T-shirt with the cross on it as Jackson.

Accordingly, affording deference to the jury's resolution of the factual issues and considering the reliability of the testimony, we hold that the non-accomplice witness testimony sufficiently tends to connect Jackson to the aggravated robberies at the Dollar General. We cannot conclude that the non-accomplice witness evidence was "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive";

therefore, the trial court's charge error was harmless.  *See Herron*, 86 S.W.3d at 632.  We overrule Jackson's sole point and affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 2, 2012